1

2

3

4

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 16, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CURTIS LOBDELL, husband, and the marital community comprised thereof, DANIELLE LOBDELL, wife, and the marital community comprised thereof,<br><br>            Plaintiffs,<br><br>      v.<br><br>COUNTY OF SPOKANE, CITY OF AIRWAY HEIGHTS, OZZIE KNEZOVICH, Spokane County Sheriff, DEPUTY GIACOMINI, Spokane County Sheriff Deputy, DEPUTY GUNTER, Spokane County Sheriff Deputy, BRAD RICHMOND, Airway Heights Police Chief, PATRICK CARBAUGH, Airway Heights Officer, ROBERT SWAN, Airway Heights Officer, OFFICER LANGAN, Airway Heights Officer, OFFICER FLAVEL, Airway Heights Officer, BRIAN NEWMAN, Airway Heights Officer,<br><br>            Defendants. | No.  2:22-CV-00020-MKD<br><br>ORDER GRANTING MOTIONS TO DISMISS WITHOUT LEAVE TO AMEND<br><br>**ECF Nos. 7, 8** |

ORDER GRANTING MOTIONS TO DISMISS - 1

Before the Court are Defendants City of Airway Heights ("Airway Heights"), Airway Heights Police Chief Brad Richmond ("Chief Richmond"), Airway Heights Officers Patrick Carbaugh, Robert Swan, Brian Newman, Langan, and Flavel's[1] (collectively the "Airway Heights Defendants") Motion to Dismiss Under 12(b)(6), ECF No. 7, and Defendants Spokane County, Spokane County Sheriff Ozzie Knezovich ("Sheriff Knezovich"), and Spokane County Sheriff's Deputies Chris Giacomini and Chris Gunter's (collectively the "Spokane County Defendants") Motion to Dismiss, ECF No. 8.

Plaintiffs bring various causes of action against local municipalities and law enforcement officers arising out of an allegedly unlawful search of Plaintiffs' home. Plaintiffs' Complaint, ECF No. 1, is difficult to discern, and the Court construes the claims therein as follows. Plaintiffs allege causes of action arising under 42 U.S.C. § 1983 for deprivations of rights protected by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. ECF No. 1 at 3 ¶ 2.1. Plaintiffs allege that Spokane County, Sheriff Knezovich, Airway Heights, and Chief Richmond (collectively "the supervisory defendants") failed to adequately train and supervise their employees, who violated their rights, or

---

[1] Officers Langan and Flavel are identified by their last names only. ECF No. 1 at 3-4 ¶ 2.9.

otherwise failed to adopt policies to prevent such violations. ECF No. 1 at 10-11, 12 ¶¶ 4.46-4.53, 5.49. Plaintiffs allege that the supervisory defendants, by custom, policy, or practice, caused constitutional injuries. ECF No. 1 at 13 ¶ 6.48; *see also* ECF No. 1 at 16-17 ¶¶ 8.46-8.52.

Plaintiffs allege that Officers Carbaugh, Swan, Langan, Flavel, and Newman, and Deputies Gunter and Giacomini, along with various unnamed defendants, acted either purposefully or with negligent and reckless disregard, to violate their Fourth and Fourteenth Amendment Rights. ECF No. 1 at 12 ¶¶ 5.47-5.48. Further, Plaintiffs allege that Officer Carbaugh and Deputies Gunter and Giacomini violated their Fourth, Fifth, and Fourteenth Amendments rights through unlawful interrogation and search and seizure. ECF No. 1 at 14 ¶¶ 6.51-6.53.

Plaintiffs allege violations of the Washington State Constitution, Article 1, Section 7. ECF No. 1 at 15 ¶¶ 7.46-7.48.

Plaintiff Curtis Lobdell alleges Malicious Prosecution by Spokane County, Deputies Gunter and Giacomini, Airway Heights, and Officers Carbaugh, Swan, Langan, Flavel, and Newman. ECF No. 1 at 17-18 ¶¶ 9.46-9.47.

In each of the pending Motions, Defendants seeks dismissal of all claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the Court **GRANTS** Defendants' Motions and dismisses Plaintiffs' Complaint without leave to amend.

1

## FACTUAL BACKGROUND

2

### A. Facts as Alleged in the Complaint

3       When considering a motion made under Fed. R. Civ. P. 12(b)(6), the Court

4 accepts the facts alleged in the Complaint as true. *Western Mining Council v.*

5 *Watt*, 643 F.2d 618, 624 (9th Cir. 1981). The following recitation is derived solely

6 from Plaintiffs' Complaint.

7       On or about February 24, 2020, Officer Carbaugh responded to a call at

8 Plaintiffs' residence. ECF No. 1 at 4 ¶ 3.1. Dispatch advised that Plaintiffs had an

9 argument, Mr. Lobdell was intoxicated and displaying a gun, and Ms. Lobdell left

10 the house while her two children remained home. ECF No. 1 at 4 ¶ 3.2. Officer

11 Carbaugh arrived, ordered Mr. Lobdell to exit the house, and Mr. Lobdell was

12 handcuffed and placed in the back seat of a patrol car. ECF No. 1 at 4-5 ¶¶ 3.3-3.7.

13 Officer Carbaugh inquired "where the gun was[,]" and Mr. Lobdell denied having

14 a gun or that there was one in the home. ECF No. 1 at 4-5 ¶ 3.8.

15       Deputies Giacomini and Gunter, and Officers Carbaugh, Swan, Flavel,

16 Langan, and Newman entered Plaintiffs' home to perform a protective sweep of

17 the premises and to check the welfare of the children. ECF No. 5-6 at ¶¶ 3.12-

18 3.13. After the sweep, Ms. Lobdell reentered her home and spoke with

19 Officer Carbaugh. ECF No. 1 at 6 ¶¶ 3.14-3.15.

20

1    Ms. Lobdell relayed the following to Officer Carbaugh:  When Ms. Lobdell

2    returned home from work, Mr. Lobdell was intoxicated and an empty bottle of

3    whiskey was on the kitchen counter.  ECF No. 1 at 6 ¶ 3.17.  Mr. Lobdell

4    confronted Ms. Lobdell and followed her around the home asking questions and

5    made threatening gestures.  ECF No. 1 at 6 ¶ 3.18.  Ms. Lobdell told Mr. Lobdell

6    to leave her alone and retreated to the children's bedroom to avoid him.  ECF No.

7    1 at 6-7 ¶ 3.19-3.20.  Mr. Lobdell entered the bedroom, stood over her, and

8    grabbed her wrists.  ECF No. 1 at 7 ¶ 3.20-3.21.  Mr. Lobdell left the bedroom,

9    went to the master bedroom, and Ms. Lobdell thought she heard the loading or

10   cocking of a gun.  ECF No. 1 at 7 ¶ 3.22.  Ms. Lobdell went to the master bedroom

11   and found Mr. Lobdell standing with his hands behind his back and an empty gun

12   case on the bed.  ECF No. 1 at 7 ¶ 3.23.  Ms. Lobdell attempted to leave, but

13   Mr. Lobdell, hands still behind his back, blocked her way.  ECF No. 1 at 7 ¶¶ 3.24-

14   3.25.  Ms. Lobdell shoved her way though, left the home, and called the police.

15   ECF No. 1 at 7 ¶ 3.26.

16       Officer Carbaugh asked Ms. Lobdell where the gun was located and

17   Ms. Lobdell took him to the bedroom, but no gun was found.  ECF No. 1 at 7-8 ¶¶

18   3.28-3.29.  Officer Carbaugh returned to his patrol car, read Mr. Lobdell his rights,

19   and Mr. Lobdell refused to speak with the officers.  ECF No. 1 at 8 ¶ 3.30.  Officer

20

Carbaugh then went back into the home, spoke with Ms. Lobdell, and her children corroborated her account of events.  ECF No. 1 at 8 ¶ 3.32.

Officer Carbaugh requested that Deputies Giacomini and Gunter and Officers Swan, Langan, Flavel, and Newman, and unnamed other officers, conduct a search of the home for a loaded firearm.  ECF No. 1 at 8 ¶ 3.35.  Officer Carbaugh again returned to the patrol car, asked Mr. Lobdell about the gun, and Mr. Lobdell again denied owning or having a firearm.  ECF No. 1 at 9 ¶¶ 3.37-3.38.

Deputy Giacomini advised Officer Carbaugh that the officers found the gun in the master bedroom.  ECF No. 1 at 9 ¶ 3.39.  The officers located an unloaded Astra 9mm pistol, 9mm ammo and magazines, .380 ammo and magazines, and .270 rifle ammo and magazines in an unlocked gun case under the bed.  ECF No. 1 at 9 ¶¶ 3.40-3.41.

Officer Langan advised Officer Carbaugh that Mr. Lobdell was a convicted felon, and Officer Carbaugh arrested Mr. Lobdell for Felony Harassment Threats to Kill DV and Unlawful Possession of a Firearm First Degree.  ECF No. 1 at 9 ¶ 3.43.  Mr. Lobdell was charged with Assault Second Degree with a Deadly Firearm and Unlawful Possession of a Firearm First Degree.  ECF No. 1 at 9 ¶ 3.44.  Mr. Lobdell pled guilty to one count of gross misdemeanor harassment, DV, and the remaining charges were dismissed.  ECF No. 1 at 9 ¶ 3.45.

**B. Body Camera Footage**

Plaintiffs submitted Officer Carbaugh's body camera footage from the night of February 24, 2020 with their Response in Opposition to the Spokane County Defendants' Motion to Dismiss, ECF No. 10.  ECF No. 11, Ex. A.  The body camera footage is explicitly referenced in Plaintiffs' Complaint.  ECF No. 1 at 8 ¶ 3.36 ("In body cam videos [Officer Carbaugh] and Deputy Giacomini can be heard discussing that the search was a violation of the Plaintiff's rights but decided they will go forward with the search in violation of the Plaintiff's rights.").  Plaintiffs rely upon the body camera footage in their response to Spokane County's Motion to Dismiss.  ECF No. 10 at 12.  Although it is not cited, Plaintiffs clearly rely upon the same body camera footage in their response to Airway Heights Defendants' Motion to Dismiss as well.  ECF No. 9 at 8-9 (quoting the video), 10 (citing to a specific time in the video and events depicted therein).

The parties have not briefed the issue, but the Court must decide whether it may consider the body camera footage.  Ordinarily, when ruling on a Fed. R. Civ. P. 12(b)(6) motion, if a district court considers evidence outside of the pleadings, it must convert the motion into a Fed. R. Civ. P. 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  However, a court may consider certain materials without converting the motion.  *Id.*

The doctrine of incorporation by reference is meant to prevent plaintiffs "from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *C.B. v. Moreno Valley Unified Sch. Dist.*, 544 F. Supp. 3d 973, 988-89 (C.D. Cal. 2021) (quotations omitted) (citing *Khoja v. Orexigen Theraputics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)). "Defendants may incorporate a document if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (quotations omitted). The doctrine extends to documents necessarily relied upon in a complaint or where the contents of the document are alleged in a complaint, and the document's authenticity and relevancy are not disputed. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). District courts have incorporated police body camera footage into a complaint for consideration of a Fed. R. Civ. P. 12(b)(6) motion when appropriate. *See, e.g.*, *Raudelunas v. City of Vallejo*, No. 2:21-cv-00394-KJM-JDP, 2022 WL 329200, at *1 (E.D. Cal. Feb. 3, 2022); *C.B.*, 544 F. Supp. 3d at 988-89; *Saved Magazine v. Spokane Police Dep't*, 505 F. Supp. 3d 1095, 1103 (E.D. Wash. 2020), *aff'd*, 19 F.4th 1193 (9th Cir. 2021), *cert. denied* 142 S. Ct. 2711 (2022).

Here, the body camera footage is referenced in Plaintiffs' Complaint, Plaintiffs offer it in support of the factual allegations therein, and no party disputes its authenticity or relevance. The bulk of Plaintiffs' factual allegations concern the

events depicted in the body camera footage.  The Court shall consider the body camera footage in ruling on the instant motions.

## LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court reviewing a Fed. R. Civ. P. 12(b)(6) motion must presume all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).  However, a court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Western Mining Council*, 643 F.2d at 624.  Dismissal is appropriate for "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

**DISCUSSION**

Plaintiffs' Complaint sets forth causes of action as follows:  (1) "Negligent Training, Retention, and Supervision;" (2) "Common Law Negligence;" (3) "Violation of Plaintiff's Constitutional Rights Under Color of Law Pursuant to 42 U.S.C. § 1983 (The Civil Rights Act);" (4) "Violation of Plaintiff's Constitutional Rights Pursuant to the Constitution of the Untied Sates [sic] and the Washington State Constitution;" (5) "*Monell* Liability;" and (6) "Malicious Prosecution."  ECF No. 1 at 10-18.  The various causes of action often concern the same protected interests, theories, and many offer mere legal conclusions in support, thus rendering the causes of action difficult to separate and consider individually.  To efficiently consider Plaintiffs' claims and Defendants' arguments, the Court construes the various claims as follows:

First, all claims against non-supervisory and individual defendants arising under Section 1983.  Plaintiffs' Complaint alleges violations of "rights, privileges, and immunities as guaranteed by the Fourth, Firth [sic], Eight [sic] and Fourteenth Amendments to the United States Constitution."  ECF No. 1 at 3 ¶ 2.1.  Plaintiffs allege that Deputies Gunter and Giacomini, and Officers Carbaugh, Swan, Langan, Flavel, and Newman violated their constitutional rights.  ECF No. 1 at 15 ¶ 7.46.

Second, all claims premised upon *Monell* or supervisor liability.  Plaintiffs' Complaint alleges that Airway Heights, Chief Richmond, Spokane County, and

Sheriff Knezovich "were deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law" by employees. ECF No. 1 at 16 ¶ 8.48. Plaintiffs' Complaint alleges that the supervisory defendants' deliberate indifference resulted in violations to the Fourth and Fifth Amendments. ECF No. 1 at 16-17 ¶¶ 8.48, 8.49. Plaintiffs separately state a cause of action for negligent training, retention, and supervision. ECF No. 1 at 10-11. However, the "injury" alleged under that cause of action is nonspecific and premised solely upon violations to Plaintiffs' constitutional rights. *See, e.g.*, ECF No. 1 at 10-11 ¶ 4.48, 4.52. Therefore, the Court construes a *Monell* liability theory against the municipal defendants and a supervisor liability theory against the supervisor defendants for a failure to adopt policies, including negligent training, retention, and supervision.

Third, all claims arising under state common, statutory, and constitutional law. Plaintiffs' Complaint states separate causes of action for negligent training, retention, and supervision, from common law negligence. ECF No. 1 at 10-12. Confusingly and redundantly, the only form of "common law negligence" alleged against the supervisory defendants is negligent training, retention, and supervision. *See* ECF No. 1 at 11-12 ¶ 5.46, 5.47, 5.49. Plaintiffs' Complaint alleges that the remaining defendants were also negligent. ECF No. 1 at 12 ¶ 5.48. Plaintiffs Complaint further alleges Malicious Prosecution, ECF No. 17-18, ¶ 9.46-9.48, and

a violation of the Washington State Constitution, Article 1, Section 7, ECF No. 1 at 15 ¶ 7.46.

### A. Section 1983 Claims Against Non-Supervisory Individual Defendants

Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). To state a claim under Section 1983, a plaintiff must show that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

The Court begins with whether Plaintiffs have sufficiently alleged a violation of a constitutionally protected right. Defendants argue that Plaintiffs' Complaint does not allege facts giving rise to such a violation. ECF No. 7 at 7, 11, 17; ECF No. 8 at 9-10.

### 1. *Fifth Amendment[2] and Eighth Amendment*

Plaintiffs offer the Fifth and Eighth Amendments as grounds for Section 1983 liability.  ECF No. 1 at 3 ¶ 2.1; 10 ¶ 4.46; 11 ¶ 5.46; 13 ¶ 6.49; 15 ¶ 7.46.

As the United States Supreme Court recently explained in *Vega v. Tekoh*, a violation of *Miranda* does not, alone, create a violation of the Fifth Amendment upon which a Section 1983 claim may be based.  142 S. Ct. 2095, 2101-02 (2022) (citing *Miranda v. Arizona*, 384 U.S. 436, 439 (1966)).  "[A] violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case."  *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (italics in original).  Plaintiffs appear to abandon the Fifth Amendment as a basis for Section 1983 liability in their Responses.  Indeed, Plaintiffs' Complaint does not allege that either of them were compelled to testify against themselves, in violation of the Fifth Amendment.

---

[2] It is unclear whether Plaintiffs lodge a Fifth Amendment claim related to the search of their home or Mr. Lobdell's arrest.  Insofar as they do, "[t]he Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government—not to those of state or local governments."  *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001).

"Eighth Amendment protections apply once a prisoner has been convicted of a crime[.]" *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016). Plaintiffs' Complaint alleges that Mr. Lobdell pled guilty to one count of gross misdemeanor harassment, DV, ECF No. 1 at 10 ¶ 3.45, and alleges no injury post-conviction. Again, Plaintiffs have abandoned the Eighth Amendment as a basis for Section 1983 liability in their Responses. Insofar as any Section 1983 claim is premised upon the Fifth or Eighth Amendment, those claims are dismissed.

### 2. Fourth Amendment Search

Plaintiffs allege that the individual defendants violated their Fourth Amendment rights by warrantlessly searching Plaintiffs' home. ECF No. 1 at 12-14 ¶¶ 5.47, 5.48, 6.51, 6.53, 6.54. Defendants argue that Ms. Lobdell consented to the search, vitiating the need for a warrant, and, in the alternative, that Defendants did not need anyone's consent to search the home pursuant to the community caretaking exception. ECF No. 7 at 7; ECF No. 8 at 10-11.

"To prevail on a section 1983 claim based on the Fourth Amendment, a plaintiff must show that the state actor's conduct was an unreasonable search or seizure." *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018). "Whether a search is reasonable under the Fourth Amendment requires a case-by-case balancing of the need for the particular search against the invasion of personal rights that the search entails . . . [.]" *Byrd v. Maricopa County Sheriff's Dep't*, 629

F.3d 1135, 1141 (9th Cir. 2011) (citations and quotations omitted).  A court should

consider "(1) the scope of the particular intrusion, (2) the manner in which it is

conducted, (3) the justification for initiating it, and (4) the place in which it is

conducted."  *Id.*  A warrantless search of a home is presumptively unreasonable.

*Pike v. Hester*, 891 F.3d 1131, 1137 (9th Cir. 2018); *see also Bonivert v. City of*

*Clarkston*, 883 F.3d 865, 873 (9th Cir. 2018) ("physical entry of the home is the

chief evil against which the wording of the Fourth Amendment is directed.")

(quotations omitted).

> i.  Consent to Search

The consent of an occupant renders a search reasonable for Fourth

Amendment purposes.  *Pike*, 891 F.3d at 1137; *Bonivert*, 883 F.3d at 873.

Ordinarily, a present tenant's objection would make a search unreasonable.

*Bonivert*, 883 F.3d at 873.  Where a co-tenant who wishes to object is absent, even

if the absence is due to lawful detention or arrest, the consent of a present co-tenant

is still renders a search reasonable.  *Fernandez v. California*, 571 U.S. 292, 303

(2014).  Consent must be freely and voluntarily given, and to determine whether

consent to search was given, the Court must consider the "totality of the

circumstances."  *Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002).

The residence at issue belonged to both Mr. and Ms. Lobdell, ECF No. 1 at 4

¶ 3.1.  Plaintiffs' Complaint alleges that Ms. Lobdell was outside of the home

during the initial search and was allowed to enter after an initial protective sweep.

ECF No. 1 at 6 ¶ 3.14.  Officer Carbaugh's body camera footage shows

Ms. Lobdell outside of the home prior to the police entering.  ECF No. 11, Ex. A,

at 3:03.  The body camera footage does not show Ms. Lobdell giving explicit

consent to search her home.  However, she first appears in the video already

speaking to a police officer, she tells Officer Carbaugh the layout of her home,

how many children are inside, that there is a back door, that Mr. Lobdell has a

handgun, and she gives the officers Mr. Lobdell's phone number, ECF No. 11, Ex.

A, at 3:05-4:18.  Ms. Lobdell explains that she was the one who called the police.

ECF No. 11, Ex. A, at 12:55-13:05, 1:01:30-1:01:40.

Later on, according to Plaintiffs' Complaint, Ms. Lobdell "escorted" Officer

Carbaugh to the bedroom to show him the last place she saw the gun case.  ECF

No. 1 at 7 ¶ 3.28.  In the body camera footage, after Mr. Lobdell is placed in the

patrol car, Ms. Lobdell is inside her home with police officers as they search for a

gun.  ECF No. 11, Ex. A, at 10:45-10:55.  Officer Carbaugh asks Ms. Lobdell to

show him where she saw Mr. Lobdell with a gun, and she leads him into a

bedroom and points out where she last saw a gun case.  ECF No. 11, Ex. A, at

13:05-13:30.

As a resident co-tenant, Ms. Lobdell had full authority to consent to a search

of her home, irrespective of Mr. Lobdell's objection.  *See Georgia v. Randolph*,

547 U.S. 103, 118 (2006) ("it would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected."); *Fernandez*, 571 U.S. at 307 ("an occupant may want the police to conduct a thorough search so that any dangerous contraband can be found and removed. In this case, for example, the search resulted in the discovery and removal of a sawed-off shotgun to which Rojas' 4-year-old son had access.").

Plaintiffs do not argue that Ms. Lobdell did not give consent, instead, they argue that they were not given warnings under *State v. Ferrier*, 960 P.2d 927, 934 (Wash. 1998) (en banc), prior to the search of their home, and any consent given was invalid as a result. ECF No. 9 at 5-6; ECF No. 10 at 8-9. *Ferrier* is a Washington Supreme Court case concerning the Washington Constitution, which "goes further than the Fourth Amendment in protecting against warrantless searches." *Ferrier*, 960 P.2d at 931. "[I]t is not the province of the Fourth Amendment to enforce state law." *Virginia v. Moore*, 553 U.S. 164, 178 (2009). "[E]ven if state law was violated, [Defendant's] consent is judged solely under federal law." *United States v. Cormier*, 220 F.3d 1103, 1111 (9th Cir. 2000). Even if Officer Carbaugh needed to give *Ferrier* warnings to Ms. Lobdell under state law, as much does not give rise to a violation of the Fourth Amendment.

1   Presuming all facts alleged as true and drawing all reasonable inferences in

2   Plaintiffs' favor, Plaintiffs' claim that the search violated the Fourth Amendment

3   fails to meet the facial plausibility requirement articulated in *Iqbal*.  556 U.S. at

4   678-79.  "A claim has facial plausibility when the plaintiff pleads factual content

5   that allows the court to draw the reasonable inference that the defendant is liable

6   for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard . . .

7   asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

8   To find that the Fourth Amendment was violated, the Court must infer from

9   the facts presented that Ms. Lobdell did not consent to the search of her home.

10   Notably, Plaintiffs do not urge the Court to make such an inference, and instead

11   argue that any consent offered was invalid.  ECF No. 9 at 5-7; ECF No. 10 at 8-10.

12   The inference would not be reasonable.  The facts as alleged "do not permit the

13   court to infer more than the mere possibility of misconduct" and therefore

14   Plaintiffs' Fourth Amendment claims fail.

15   Plaintiffs' Fourth Amendment claims may be dismissed for this reason,

16   alone.  However, the Court continues to offer an additional basis for dismissal.

17   ii.   Community Caretaking Exception

18   There is an exception to the Fourth Amendment's warrant requirement

19   where "the exigencies of the situation make the needs of law enforcement so

20   compelling that the warrantless search is objectively reasonable under the Fourth

Amendment." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quotations omitted). An entry pursuant to the emergency aid exception is reasonable where the circumstances, viewed objectively, justify the action. *Bonivert*, 883 F.3d at 876-77. The two-part test for whether a warrantless search was reasonable under the emergency doctrine asks (1) under the totality of the circumstances, whether "law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the end." *U.S. v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008).

According to Plaintiffs' Complaint, when law enforcement arrived at the Lobdell home, they were responding to a domestic dispute where a gun was displayed. ECF No. 1 at 4 ¶¶ 3.1-3.2. Even after the suspect, Mr. Lobdell, was removed from the home, the location of the gun was unknown, ECF No. 1 at 6 ¶ 3.13, and both Ms. Lobdell and her daughter reported hearing Mr. Lobdell cock the gun. ECF No. 1 at 7-8 ¶¶ 3.22, 3.32. In the body camera footage, Ms. Lobdell's son tells Officer Carbaugh that he saw Mr. Lobdell following his mother with a gun, and that he saw the box that the gun was in. ECF No. 11, Ex. A, at 28:10-28:45. Ms. Lobdell tells Officer Carbaugh that she does not know where the gun is currently located or how many guns Mr. Lobdell owns. ECF No. 11, Ex. A, at 29:00-29:15.

ORDER GRANTING MOTIONS TO DISMISS - 19

1    Plaintiffs argue that the body camera footage "clearly shows a pretextual

2    intent to conduct a warrantless search" and that "the officers were actively

3    conspiring to create justifications for a warrantless search." ECF No. 10 at 12.

4    The subjective motivation of the officers conducting the search is irrelevant for the

5    instant analysis. *Snipe*, 515 F.3d at 951. The Court considers "the totality of the

6    circumstances" to determine whether there was an objectively reasonable basis for

7    the search. *Id.* at 951-52.[3]

8    Plaintiffs argue that, once Mr. Lobdell was placed in the patrol car, there

9    was no further risk of injury justifying a search under the community caretaking

10   exception. ECF No. 10 at 14-15. The Court disagrees. Considering the facts as

11   alleged, Ms. Lobdell, her daughter, and her son each confirmed that there was a

12   gun in the home and that its location was unknown. ECF No. 11, Ex. A, at 28:10-

13   28:45. The risk that the young children may find a loaded gun was an "objectively

14   reasonable basis for concluding there was an immediate need to protect others . . .

15   from serious harm." *Snipe*, 515 F.3d at 952.

16   _____

17   [3] The Court pauses to note that, contrary to Plaintiffs' argument, in the body

18   camera footage, the police officers verbally explain that their search for the gun is

19   motivated by the need to secure it before leaving, as there are children in the home.

20   *See, e.g.*, ECF No. 11, Ex. A, at 25:20-26:55; 48:00-48:45; 55:00-55:55.

Additionally, the "scope and manner" of the search "were reasonable to meet the need." *Id.* In the body camera footage, the officers are seen searching through the entirety of the Lobdell home. *See, e.g.*, ECF No. 11, Ex. A, at 30:40-34:10; 45:30-47:25. As recounted by Ms. Lobdell, Mr. Lobdell had followed her throughout the house, and after she left, he was alone inside until the police arrived. ECF No. 11, Ex. A, at 11:00-12:55. The need of the search was to locate a gun that could be anywhere in the house, therefore, the scope of the search was reasonable.

### 3. *Fourth Amendment Arrest*

Plaintiffs argue that the police officers violated Mr. Lobdell's Fourth Amendment rights to be free from arrest without probable cause. ECF No. 1 at 13 ¶¶ 6.49, 6.50. Plaintiffs argue that "Defendants, acting under the color of state law, deprived [Mr. Lobdell] of his rights to be free from unreasonable seizure in violation of the Fourth and Fourteenth Amendment[.]" ECF No. 1 at 16 ¶ 8.46.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001). "The test for whether probable cause exists is whether at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to

1    warrant a prudent person in believing that the petitioner had committed or was

2    committing an offense." *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th

3    Cir. 2007) (alterations and quotations omitted).  "Probable cause exists when,

4    under the totality of the circumstances known to the arresting officers (or within

5    the knowledge of the other officers at the scene), a prudent person would believe

6    the suspect had committed a crime." *Id.* at 471 (citing *Dubner*, 266 F.3d at 965).

7        The facts as alleged in Plaintiffs' Complaint, and the body camera footage

8    incorporated, demonstrate that law enforcement had probable cause to arrest

9    Mr. Lobdell.  Ms. Lobdell recounted the story leading up to her calling the police

10   to Officer Carbaugh.  As alleged in Plaintiffs' Complaint, when Ms. Lobdell got

11   home from work, Mr. Lobdell was intoxicated and confronted her, he followed her

12   around and threatened her, when she went into the children's bedroom to escape

13   him, he entered, grabbed her wrists, and continued to threaten her.  ECF No. 1 at 6-

14   7 ¶ 3.16-3.27.  Further, Ms. Lobdell and her two children indicated that

15   Mr. Lobdell had followed Ms. Lobdell around with a gun in his hand.  *See, e.g.*,

16   ECF No. 1 at 7 ¶ 3.27; ECF No. 11, Ex. A, at 28:10-28:45.  These circumstances

17   would lead a prudent person to conclude that Mr. Lobdell had committed, at the

18   very least, the crime of domestic violence harassment.  *See generally* RCW

19   9A.46.020, 10.99.020, 10.99.080.  Plaintiffs' Complaint fails to plead sufficient

20

facts to support their claim that law enforcement lacked probable cause to arrest

Mr. Lobdell in violation of the Fourth Amendment.

### 4. *Fourteenth Amendment Due Process*

Plaintiffs claim in their Complaint that Mr. Lobdell was arrested and

charged without cause, "partially due the illegal interrogation, warrantless search

and seizure performed by law enforcement officers." ECF No. 1 at 14 ¶ 6.50.

Plaintiffs argue that a "conspiracy and manufacturing of justifications" occurred

that "clearly deprive[d] Mr. Lobdell of his 14th Amendment Due Process rights."

ECF No. 10 at 12.

"The Fourteenth Amendment's Due Process Clause protects individuals

against depravations of liberty without due process of law." *Reed v. Baca*, 800 F.

Supp. 1102, 1109 (C.D. Cal. 2011). Plaintiffs do not distinguish any claim under

the Fourteenth Amendment apart from their claims made under the Fourth

Amendment. As the Ninth Circuit found in *Fontana v. Haskin*, "[Plaintiffs']

claim, although a possible fit under the Fourteenth Amendment, is better seen as a

Fourth Amendment claim because [he] had been seized by the police." 262 F.3d

871, 881 (9th Cir. 2001) (citing *Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir. 1990)).

Any Fourteenth Amendment claim would be redundant of Plaintiffs' Fourth

Amendment claim, and would otherwise fail on the same grounds as discussed

above.

In sum, the factual allegations as to the conduct of the individual defendants do not amount to a violation of any constitutional right.  Plaintiffs' Complaint fails to state a claim for relief upon which relief can be granted that is plausible on its face against the individual defendants.  *Iqbal*, 556 U.S. at 678.

**B. Section 1983 Claims Against Municipal and Supervisory Defendants**

Plaintiffs' Complaint alleges that the supervisory defendants "were deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law" by employees.  ECF No. 1 at 16 ¶ 8.48.  Plaintiffs' Complaint attempts to establish a *Monell* claim against Airway Heights and Spokane County, and supervisory liability against Sheriff Knezovich and Chief Richmond.  ECF No. 1 at 15-16 ¶¶ 8.46-8.52.

Municipalities face Section 1983 liability "for constitutional violations resulting from official county policy or custom."  *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).  A supervisor's liability must be premised upon "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Each theory requires a demonstration that the plaintiff suffered constitutional injury.  As explained above in relation to the individual defendants, Plaintiffs' Complaint fails to set forth factual allegations amounting to a violation of any

constitutional right.  Plaintiffs' claims related to *Monell* or supervisor liability are dismissed.

### C. State Law Claims

#### 1. Negligent Training, Retention, and Supervision

Plaintiff's Complaint sets forth a cause of action for "Negligent Training, Retention, and Supervision" against the supervisory defendants.  ECF No. 1 at 10-11.  Claims for negligent hiring, retention, training, and supervision "arise when the employee is acting outside the scope of employment."  *Evans v. Tacoma School District No. 10*, 380 P.3d 553, 564 (Wash. Ct. App. 2016) (citing *Neice v. Elmview Group Home*, 929 P.2d 420, 425-26 (Wash. 1997)); *see also Hicks v. Klickitat County Sheriff's Office*, 515 P.3d 556, 563 (Wash. Ct. App. 2022).  Plaintiffs' Complaint contains no allegation that any employee of the supervisory defendants acted outside the course and scope of employment during the events in question.  *See Evans*, 380 P.3d at 563-64.  Plaintiffs' Complaint fails to state a claim for negligent retention, training, or supervision.

#### 2. Common Law Negligence

Plaintiff's Complaint separately states a cause of action for Common Law Negligence, ECF No. 1 at 11-13, but, confusingly, the sole basis for common law negligence alleged against the supervisory defendants is their failure to train their employees.  ECF No. 1 at 11-12 ¶ 5.46; 12 ¶¶ 5.47, 5.49.  The duplicative claims

1    are dismissed.  *See M.M. v. Lafayette School Dist.*, 681 F.3d 1082, 1091 (9th Cir.

2    2012) (citation omitted).  Plaintiffs pursue negligence against the individual

3    defendants as well.

4         The elements of a common law negligence claim are: "(1) the existence of a

5    duty owed to the complaining party; (2) a breach of that duty; (3) a resulting

6    injury; and (4) that the claimed breach was the proximate cause of the injury."

7    *Jackson v. City of Seattle*, 244 P.3d 425, 428 (Wash. App. Ct. 2010).  "As a

8    general rule, law enforcement activities are not reachable in negligence."  *Keates v.*

9    *City of Vancouver*, 869 P.2d 88, 93 (Wash. Ct. App. 1994) (collecting cases).

10   Governments are not reachable in tort if the duty breached was owed to the public,

11   and not to an individual.  *Beltran-Serrano v. City of Tacoma*, 442 P.3d 608, 614

12   (Wash. 2019) (en banc).  This principle is also known as the public duty doctrine.

13   *Cummins v. Lewis County*, 133 P.3d 458, 461 (Wash. 2006) (en banc).

14        The duty to obtain a search warrant under the Fourth Amendment is "not a

15   duty shared with private persons."  *Munich v. Skagit Emergency Commc'n Ctr.*,

16   288 P.3d 328, 337 (Wash. 2012) (Chambers, J., concurring) (internal citations

17   omitted).  Plaintiffs concede that the public duty doctrine applies, but argues that

18   the "failure to enforce" exception applies.  ECF No. 10 at 7.

19        The failure to enforce exception requires a plaintiff to demonstrate that

20   "governmental agents responsible for enforcing statutory requirements possess[ed]

ORDER GRANTING MOTIONS TO DISMISS - 26

actual knowledge of a statutory violation," that the agents "fail[ed] to take

corrective action despite a statutory duty to do so," and that "the plaintiff [was]

within the class the statute intended to protect." *Ehrhart v. King County*, 460 P.3d

612, 620 (Wash. 2020).  The exception is to be "narrowly construed" and applies

only where the relevant statute "mandates a specific action to correct a violation."

*Pierce v. Yakima County*, 251 P.3d 270, 274 (Wash. App. Ct. 2011).

Plaintiff cites to RCW 10.79.040, which provides as follows:

(1) It shall be unlawful for any police officer or other peace officer to enter and search any private dwelling house or place of residence without the authority of a search warrant issued upon a complaint as by law provided.

(2) Any police officer or other peace officer violating the provisions of this section is guilty of a gross misdemeanor.

The failure to enforce exception requires that the relevant statute, in certain terms,

impose a duty on the government in response to a violation.  *Pierce*, 251 P.3d at

274.  Examples of statutes supporting the exception offered in *Pierce* include a city

ordinance directing the electrical inspector to sever nonconforming lighting

systems discovered during inspection, and a statute directing police officers to take

intoxicated persons who have threatened harm into custody.  251 P.3d at 274.  In

another case, a code provision requiring animal control to discern whether a

particular dog is dangerous after a citizen report gave rise to the exception.

*Gorman v. Pierce County*, 307 P.3d 795, 803 (Wash. Ct. App. 2013).  Statutes

ORDER GRANTING MOTIONS TO DISMISS - 27

giving rise to the exception must be clear, statutes that invoke discretion on the part of an official do not suffice.  *Pierce*, 251 P.3d at 274-75.

Plaintiffs rely upon a statue that deems certain behavior criminal.  The statute does not impose an affirmative duty on the government to respond to a statutory violation.  Assuming for the sake of argument that Plaintiffs have successfully alleged a violation of RCW 10.79.040, that statute does not "mandate a specific action when the [statute] is violated."  *Gorman*, 307 P.3d at 802. Plaintiffs have failed to state a claim for common law negligence due to the public duty doctrine, and have failed to identify an applicable exception to the doctrine.

### 3. *Washington State Constitution*

Plaintiffs allege that "Defendants acted with reckless and callous indifference to [Plaintiffs'] rights and failed to prevent injury to [Curtis Lobdell], [in] violation of his rights pursuant to Article 1, Section 7 of the Washington State Constitution[.]"  ECF No. 1 at 15 ¶ 7.46.  Under Washington State law, absent express statutory authority, a person cannot seek damages for alleged violations of the Washington constitution.  *Blinka v. Wash. State Bar Ass'n,* 36 P.3d 1094, 1102 (Wash. Ct. App. 2001).  Article 1, § 7 of the Washington State Constitution provides, in its entirety, that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."  "Washington law contains no counterpart to 42 U.S.C. § 1983 . . . .  Washington courts have consistently rejected

1   invitations to establish a cause of action for damages based upon constitutional

2   violations . . . [and] refused to recognize a cause of action for a constitutional

3   violation when plaintiffs may obtain adequate relief under the common law."

4   *Peltier v. Sacks*, 328 F. Supp. 3d 1170, 1184-85 (W.D. Wash. 2018).  Plaintiffs

5   have failed to state a claim for relief under the Washington State Constitution.

6            *4.  Malicious Prosecution*

7            Plaintiffs' Complaint alleges that Curtis and Danielle Lobdell "have been

8   subjected to criminal prosecution by" Spokane County, Sheriff Knezovich, the

9   Airway Heights, and Chief Richmond.  ECF No. 1 at 17 ¶ 9.46.  Plaintiffs'

10  Complaint accuses Airway Heights, Spokane County, Deputies Giacomini and

11  Gunter, and Officers Carbaugh, Swan, Flaval, Langan, and Newman of

12  "conspir[ing] to prosecute [Curtis Lobdell] for crimes that were not properly

13  investigated leading to the Plaintiff [being] charged for these crimes in violation of

14  his Constitutional Rights."  ECF No. 1 at 18 ¶ 9.47.

15           When a malicious prosecution claim is centered on a wrongful criminal

16  prosecution, the plaintiff must establish five elements:

17       (1) that the prosecution claimed to have been malicious was instituted
         or continued by the defendant;
18       (2) that there was want of probable cause for the institution or
         continuation of the prosecution;
19       (3) that the proceedings were instituted or continued through malice;
         (4) that the proceedings terminated on the merits in favor of the
20       plaintiff, or were abandoned; and

(5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Clark v. Baines*, 84 P.3d 245, 911 (Wash. 2004).  Plaintiffs' Complaint fails to allege that Ms. Lobdell was ever charged with a crime.  Plaintiffs' Complaint alleges that Mr. Lobdell was charged "with assault 2nd degree with a deadly firearm and unlawful possession of a firearm 1st degree[,]" and ultimately all were dismissed aside from "one count of gross misdemeanor harassment, DV[,]" to which Mr. Lobdell pled guilty.  ECF No. 1 at 10 ¶¶ 3.44, 3.45.

Probable cause is a complete defense to malicious prosecution.  *Rodriguez v. City of Moses Length*, 243 P.3d 552, 555 (Wash. Ct. App. 2010).  As explained above, Mr. Lobdell's arrest was supported by probable cause.  *See supra* section A.3.  Plaintiffs' Complaint fails to state a claim for malicious prosecution.

**D.  Leave to Amend**

Plaintiffs do not seek leave to amend their Complaint, but the Court considers whether such leave is appropriate.  A district court need not grant leave to amend where amendment would be futile.  *Rainero v. Archon Corp.*, 844 F.3d 832, 840-41 (9th Cir. 2016) (citing *Foman v. David*, 371 U.S. 178, 182 (1962)).  Plaintiffs' factual allegations are legally insufficient to support their causes of action.  With the benefit of body camera footage incorporated into the Plaintiffs' Complaint, the Court may readily conclude that no amendment would cure the deficiencies in the Complaint.  Indeed, "[a] party cannot amend pleadings to

contradict an earlier assertion made in the same proceeding." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt.*, 744 F.3d 595, 600 (9th Cir. 2014).  No set of factual allegations consistent with those already made in this proceeding would support any of the causes of action that Plaintiffs pursue.

### CONCLUSION

For the reasons stated above, Plaintiffs' Complaint fails to state a claim for relief that is facially plausible under Section 1983 or state law.  Plaintiffs' Complaint is dismissed with prejudice and without leave to amend.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The Airway Heights Defendants' Motion to Dismiss, **ECF No. 7**, is **GRANTED.**  The Spokane County Defendants' Motion to Dismiss, **ECF No. 8**, is **GRANTED.**

2.    Plaintiffs' Complaint, **ECF No. 1**, is **DISMISSED with prejudice,** and without leave to amend.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provide copies to the parties and **CLOSE** the file.

DATED March 16, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTIONS TO DISMISS - 31